### DAVISON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 78.

Circuit Court of Appeals, Second Circuit.

Jan. 13, 1936.

Alfred T. Davison, of New York City (Alfred T. Davison and E. L. Mackenzie, both of New York City, of counsel), for petitioner-appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to the Atty. Gen., for respondent-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question involved on this appeal is whether the executor of the will of Roswell Eldridge, who died on January 27, 1927, a resident of the state of New York, is entitled to have the value of three charitable bequests deducted from the gross estate in order properly to determine the net estate for purposes of taxation.

The applicable portions of the Revenue Act 1926, 44 Stat. 72, are as follows:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate— * * *

"(3) The amount of all bequests, legacies, devises, or transfers, to * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual." U.S.C. title 26, § 412 (26 U.S.C.A. § 412 and note).

The testator left his residuary estate in trust, the income to be applied to the use of his wife, Louise U. Eldridge, during her life, and the corpus, upon her death,

to be distributed to such of the lineal descendants of his brother Lewis A. Eldridge "and/or to such persons, associations, corporations and institutions and in such manner" as his wife should direct by her will, "with full power to dispose of such trust fund in all respects as if such trust fund were her own property. * * *" The testator further provided that, in the event that his widow failed to exercise the power of appointment, the trustees, upon her death, should apply the income of the trust to the use of his mother-in-law, Louisa U. Skidmore, and on Mrs. Skidmore's death, or if she did not survive his widow, then upon the latter's death should pay over the principal to three charitable corporations, $100,000 to St. George's Church, Hempstead, N. Y.; $250,000 to Friends Boarding House of Concord Quarterly Meeting, West Chester, Pa.; and $50,000 to Nassau Hospital, Mineola, N. Y.

The petitioner, George W. Davison, qualified as executor on April 22, 1927. Mrs. Skidmore, the mother-in-law of the testator, died on June 5, 1927, but his widow is living. The amount of the deduction claimed by reason of the charitable bequests, namely, $273,588, was based upon the valuation at the time of the testator's death of the remainder interest of the charitable legatees in the legacies of $400,000, which were subject to the life estates of the widow and Mrs. Louisa U. Skidmore. The deduction was disallowed by the Commissioner, whose action was affirmed by the Board of Tax Appeals on the ground that the charitable bequests were so contingent and uncertain that they did not fall within the deduction allowed by section 303 (a) (3) of the Revenue Act of 1926. It is contended by the petitioner that these bequests were sufficiently certain to entitle the estate to the deduction claimed.

The will of Roswell Eldridge was admitted to probate by the surrogate of Nassau county on April 22, 1927. On May 27, 1927, his widow, Louise U. Eldridge, executed her will, and provided in respect to the power of appointment given her by her husband's will over the trust fund in the residuary estate as follows: "* * * For the reason that I desire the wishes of my late husband * * * carried out, I do not exercise such power of appointment, and I give no direction and make no disposal of such trust fund, to the end that there shall be an absence of any direction by me." On April 10, 1929, Mrs. Eldridge executed another will containing the same provision. She made no other testamentary dispositions after that time except two codicils, by neither of which was the clause declining to exercise the power of appointment affected. But on January 24, 1933, she executed an instrument of renunciation and surrender of the power of appointment granted to her by her husband's will and filed it in the Surrogates Court on that date. On its face it was an agreement between herself and the Commissioner of Internal Revenue, and in it Mrs. Eldridge declared and agreed that she had not exercised, and would not exercise, the power of appointment, so that the bequests to charity would be absolute, and would be exempt from all taxes.

It is plain that, when Roswell Eldridge died, it could not be determined whether the charitable bequests would ultimately take effect or not, for the reason that the fund out of which they might be paid was subject to pass to others under the will of Mrs. Eldridge. In such circumstances, the gift to charities was essentially dependent upon the exercise of the power by Mrs. Eldridge, and it can make no difference whether the legacies in a technical sense were formally contingent or were vested subject to be divested. In either case the rights of the legatees to the charitable bequests were actually contingent and wholly uncertain.

It is hard to see how the executor of the will of Mr. Eldridge is in any better position to claim that the corpus of the trust, which had been bequeathed to the charitable corporations, should be deducted in order to ascertain the net taxable estate than he would be if Mrs. Eldridge had died shortly after her husband without exercising the power of appointment given her by his will. In the latter case it can hardly be supposed that a deduction would have been allowable, otherwise the practice of determining the value of the remainders as of the date of the testator's death by the use of mortality tables, rather than by eventualities, would be erroneous. The bequests to charity, to be deductible under section 303 (a) (3) of the Revenue Act of 1926, must be reasonably certain at the time of the testator's death, and clearly they were not so in the present case. The decisions in Ithaca Trust Co. v. United States, 279 U. S. 151, 49 S.Ct. 291, 73 L. Ed. 647, and United States v. Provident

Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793, are in no way contrary to the foregoing rule, 'for in each case there was' a practical certainty at the time of the testator's death that the charitable bequests would take effect. Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667, seems to govern.

The recent decision of the Supreme Court in Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, cannot help the taxpayer. There the testator had created a trust for the life of A with power of appointment in the life beneficiary by will, and in default of appointment had bequeathed the corpus of the trust to B and C. A died, and by will exercised the power of appointment in favor of B and C, who would receive the same legacies whether they accepted them under the original will or under the power. They chose to °take under the original will in order to escape taxation which would not be laid upon gifts passing under it. There was no question whether, when the original testator died, the gifts to B and C were reasonably certain to take effect. The only question was under which will the legacies passed. The court held that they did not pass by virtue of the exercise of the power because the legatees had the right to choose what legacies they would receive.

The taxpayer especially relies on Humphrey v. Millard, 79 F.(2d) 107 (C.C.A.2), and Smith v. Commissioner, 78 F.(2d) 897 (C.C.A.1). The first decision dealt with the New York Mortmain Act, which provides that no person having a husband, wife, child, descendant, or parent shall by will make bequests to charitable corporations in trust or otherwise of more than one-half of his estate. Under the decisions of the New York courts, gifts in 'excess of one-half of the estate might be avoided at the instance of the person to be benefited by the statute, but were not void. The bequests to charity which on the face of the will were free from any contingency were held deductible under section 303 (a) (3) because the probate of the will rendered them safe from the danger of abatement. The second case came up under a Rhode Island statute permitting modifications of a decedent's will by agreement and probate of the will as thus modified. The will was modified so as to include gifts to charitable corporations which did not appear in the original instrument, but were added by virtue of the agreement. The Court of Appeals of the First Circuit held that the Rhode Island statute rendered the will as modified and thus probated the will of the testator for all purposes, and that the charitable gifts were deductible under section 303 (a) (3) of the Revenue Act of 1926, 44 Stat. 72 (26 U.S.C.A. § 412 and note). While there may be doubt whether such a statutory modification of a decedent's will could bring the facts within exemptions created by. Congress, both Smith v. Commissioner and Humphrey v. Millard differ from the present case, because the decrees of probate which validated the bequests freed them from every element of uncertainty and created indefeasible rights in the legatees which took effect shortly after decedent's death. Here the charitable bequests remained in vacuo for a long time, and not until six years had elapsed was the ambulatory power to divert the $400,000 from charitable objects renounced by the donee of the power in a way that was irrevocable.

It may well be that a renunciation of the power of appointment would for some purposes relate back to the date of the death of the original testator. But we cannot believe that a right to appoint which inhered in the donee of the power for six years before it was formally renounced and which, if exercised, would have terminated the charitable bequests in remainder, may, by applying the legal fiction of "relation," be treated as though it had never existed. The practical certainty required in order to justify the deductions of bequests to charity under section 303 (a) (3) is not to be satisfied in such an unreal way.

In our opinion, the Board of Tax Appeals properly held that such certainty as the Supreme Court has found necessary to justify the deduction of charitable bequests under section 303 (a) (3) did not exist in the present case.

The order of the Board of Tax Appeals is accordingly affirmed.