**H. Wadsworth HIGHT, one of the Executors of the will of Alice F. COCHRAN, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. 2279.**

United States District Court
D. Connecticut, Civil Division.
April 30, 1957.

---

G. Rita, Special Asst. to Atty. Gen., for defendant.

ANDERSON, District Judge.

Alice F. Cochran died testate on January 24, 1939 while domiciled in New Haven, Connecticut. In her will, which was admitted to probate in New Haven, she left the residue of her estate "to such charitable, benevolent, religious or educational institutions as my executors hereinafter named may determine". The Commissioner of Internal Revenue assessed and collected an estate tax on the residuary estate in the amount of $369,-180.88. Deductions claimed by the original plaintiffs on the ground that the residue was intended to be left, and was in fact used, for charitable, religious and educational purposes were disallowed because the will authorized the executors to expend the residue for "benevolent institutions" which would go beyond the deductions authorized by Sec. 303(a) (3) of Chapter 27 of the Revenue Act of 1926, 26 U.S.C.A. (I.R.C.1939) § 812(d). The tax so assessed was paid, with interest, on May 31, 1943. The present action is for a refund of the sum paid. Since the commencement of the action two of the executors have died and only the plaintiff survives.

Early in 1942 a declaratory judgment action seeking the answers to several questions concerning the will of Alice F. Cochran came before the Supreme Court of Errors of the State of Connecticut. Cochran v. McLaughlin, 128 Conn. 638, 24 A.2d 836. Among the questions adjudicated was one which asked whether or not any class of beneficiaries would be included under the designation "benevolent" which did not fall within the word "charitable" as used in the will. The court held, 128 Conn. on pages 644 and 645, 24 A.2d on page 839, of the opinion that the word "benevolent" was used in the Cochran will with its natural significance, that it is broader in meaning than the legal use of the word "charitable" and that, therefore, the executors "are authorized by the will to pay such part of the fund as they deem

Charles M. Lyman of Bronson, Rice & Lyman, New Haven, Conn., Jackson J. Holtz, Boston, Mass., for plaintiff.

Simon S. Cohen, U. S. Atty., Dist. of Connecticut, Hartford, Conn., Frederic

proper to institutions which are benevolent in their nature, as distinguished from those which are charitable."

What is meant by the words "exclusively for * * * charitable * * purposes" in Sec. 303(a) (3) of the Federal estate tax law is for the Federal courts to say in the light of what they find the Congressional intent to have been regardless of what the State of the decedent's domicile may have to say about it or how strictly or liberally that State may define "charitable" in the legal sense for different purposes. United States v. Pelzer, 1941, 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913; Morgan v. Commissioner, 1939, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 84 L.Ed. 585; Lyeth v. Hoey, 1938, 305 U.S. 188, 193, 59 S. Ct. 155, 83 L.Ed. 119.

However, it is the state law which governs the validity of a will, its admissibility to probate and its construction; and the state law determines what the rights, duties and powers of the executors are under the will.

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law." Morgan v. Commissioner, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585.

The Supreme Court of Connecticut has construed the will of Alice F. Cochran, deceased, as giving the power to the executors to pay over funds out of the residue of the estate to institutions benevolent in nature. The term "benevolent" has "no legal meaning separate from its usual signification * * * [it] may include purposes which may be deemed charitable and it may also include all gifts prompted by good will or kind feelings toward the recipient, whether or not an object of charity." 10 C.J.S. Benevolent 342, 343.

The question now before the court in the present case is whether the power derived from the will and placed in the hands of the executors, as adjudicated by the Connecticut Court, goes beyond the bounds of the words "charitable purposes" in Sec. 303(a) (3) of the Federal estate tax as most broadly and liberally defined and construed by the Federal Courts. It is apparent that it does.

The accepted definition of a legal charity is that of Mr. Justice Gray in Jackson v. Phillips, 14 Allen, Mass., 539, 556.

"A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

This has been applied by the Federal Courts to many different fact situations: some in which the word "charitable" was not used, others in which it was used with the word "benevolent" and others in which the word "benevolent" was used alone. In each of these instances, the Federal Court has been able to find in effect—from the facts of the case that actually under the will the executors or trustees have been given no power to pay over funds of the estate for uses outside of the charitable purposes mentioned in the exemption provisions of the Federal estate tax. But in no such case has there been a state adjudication of the powers of the very executors involved in the tax suit. St.

Louis Union Trust Co. v. Burnet, 8 Cir., 59 F.2d 922; Koehler v. Lewellyn, D.C., 44 F.2d 654; Michigan Trust Co. v. United States, D.C., 21 F.Supp. 482; Union & New Haven Trust Co. v. Eaton, D.C., 20 F.2d 419. None of these cases has defined or construed "charitable purposes" so broadly as to include payments to institutions whose principal function is to provide pleasure and cheer to their members or indulge in acts of generosity and kindness, unrelated to the factors of relieving needs of an indefinite number of persons or relieving a public burden, implicit in the definition of a legal charity. In this case, however, the Supreme Court of Errors of Connecticut has construed the will as giving the executors this broad power. The fact that they have not used it or have no intention of using it is, of course, of no consequence. First Trust Co. of St. Paul State Bank v. Reynolds, 8 Cir., 1943, 137 F.2d 518; Adye v. Smith, 44 Conn. 60.

Of course, the cases do not display neatly pigeon-holed and labeled categories of state-determined legal interests on the one hand and a selection of those same interests which the Congress has decided to tax on the other. In adherence to the principle that, for the purposes of a federal tax uniformly imposed throughout all the states, state law is not controlling over Congressional intent to tax or exempt certain persons or transactions, Federal Courts have in certain instances disregarded the claim that state law determines matters right up to the imposition of the federal tax, an assertion which would regard the Federal action as a mere administrative routine, following on state classifications of each transaction, status, right or interest. In some of these cases courts have said that they will look through non-adversary or pro forma state proceedings. Third National Bank & Trust Co. of Springfield v. United States, 1 Cir., 1956, 228 F.2d 772; First-Mechanics Nat. Bank of Trenton v. Commissioner, 3 Cir., 1940, 117 F.2d 127; but see Gallagher v. Smith, 3 Cir., 1955, 223 F.

2d 218. In other instances, although a state label corresponded with a term used by Congress, courts have decided that the underlying facts were not facts Congress had in mind in using the expression in the tax statute. Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585; Estate of Rogers v. Commissioner, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134.

Various state doctrines have been denied effectiveness in the field of federal taxes. Although California law treated ripening fruit as real property, the Supreme Court termed the state doctrine immaterial in finding that sale of ripening fruit produced ordinary income rather than capital gain. Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232. Similarly in Putnam v. Commissioner, 352 U.S. 82, 77 S. Ct. 175, 176, 1 L.Ed.2d 144, the Court stated its decision on the tax status of guarantors' losses in terms of "the familiar rule" of general law not the law of the taxpayer's state. In Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, the Court found in favor of a taxpayer who had received money in compromise of a will contest; they held that despite Massachusetts doctrine that this was not taking by inheritance, it was within Congress's intent in exempting recipients from taxation on inherited income.

This Court is mindful that, in enforcing the federal tax statutes and protecting their obvious intent to deal with certain economic realities it is not bound to follow labels, characterizations, or particular adjudications of state courts.

The instant case, however, is not one involving "recondite niceties of property law nor * * * a crazy-quilt of local formalisms or historic survivals." Estate of Rogers v. Commissioner, 320 U. S. 410, 414, 64 S.Ct. 172, 174, 88 L.Ed. 134. The situation is like those in two cases where charitable deductions were not allowed because state law made the attempted bequests void. Watkins v. Fly, 5 Cir., 1943, 136 F.2d 578; Selig

v. United States, D.C., 73 F.Supp. 886, affirmed, 3 Cir., 166 F.2d 299. Here the Connecticut court has said what these executors are permitted to do with the residuary funds of the Cochran estate. This court is not equating charitable deductions allowed by Connecticut in enforcing local taxes with the deductions intended to be allowed by Congress, but rather is looking at what the Cochran executors may legally and actually do with the residue of the estate and then finding that their discretion as to what institutions they may distribute the money, is so wide as to be outside even a liberal interpretation of the intent of Sec. 303(a) (3) to exempt transfers "exclusively for religious, charitable, scientific, literary, or educational purposes."

The plaintiff urges that evidence relative to the testatrix' intent has been presented in the trial of this case in addition to what was before the state court and that this further evidence should persuade this court to construe the will differently. If this court could disregard the adjudication of the state court in defining the powers of the executors under the will, or if there had been no such adjudication, it could find from the evidence that Alice F. Cochran in her lifetime gave substantially to charities which were exempt from income tax; that her business and tax advisor for twenty years explained to her the matter of charities exempt or deductible for tax purposes; that she was interested in this aspect of making donations; that her advisor never knew of her making a gift to a benevolent institution and he never heard her use the word "benevolent"; that on May 13, 1933, thirteen days before making the codicil to her will, she prepared a list entitled "List of favorite charities to be named in codicil or change of will" which contained the names of twenty-six institutions all of which have been stipulated by the parties as exempt from the Federal estate tax; that none of the institutions listed was named in the codicil or any change of her will. But, even if all of these facts were assumed, with a consideration of the entire will,

read in the light of these and the other surrounding circumstances, they would not bring this court to conclude that, as used in the Cochran will, the word "benevolent" meant exactly the same as "charitable", particularly where the two words are used side by side in the disjunctive. "The question is of course not what did the testatrix mean to say, but what did she mean by what she did say * * *". Mitchell v. Reeves, 123 Conn. 549, 556, 196 A. 785, 788, 115 A. L.R. 1114.

The plaintiff also claims that both expressly and through committing all of the residue to charitable institutions within the meaning of the Federal estate tax exemption, he has *disclaimed* the power to pay any funds to benevolent institutions. However, the placing by an executor of a limitation or condition on the exercise of a plenary power granted to him under the will is not a disclaimer but is instead, an effort to change the nature of the legal interest described by the testatrix in her will. This the executor cannot do. Adye v. Smith, 44 Conn. 60

Judgment and costs may enter for the defendant, and the action is dismissed.